## CAMPBELL et al. v. JOHNSON.

(Circuit Court of Appeals, Ninth Circuit.    February 1, 1909.)

No. 1,617.

1. COURTS (§ 325*) — JURISDICTION OF FEDERAL COURTS — ALLEGATIONS IN PLEADINGS—WAIVER.

The objection that a complaint in a federal court omits to allege the place of residence of defendants, or that they are residents of the district in which they are sued, is one that they may waive, and they are held to have waived it when they make a general appearance and in a demurrer join such objection with the objection that the complaint does not state facts sufficient to constitute a cause of action.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 325.*

Waiver of right as to district in which suit may be brought, see notes to Memphis Sav. Bank v. Houchens, 52 C. C. A. 192; McPhee & McGinnity Co. v. Union Pac. R. Co., 87 C. C. A. 634.]

2. COURTS (§ 322*)—JURISDICTION OF FEDERAL COURT—ALLEGATIONS IN PLEADINGS.

Where the original complaint in a federal court contained proper allegations of the citizenship of the parties at the time of the commencement of the action, the court on service of process thereon acquired jurisdiction, which it did not lose by a repetition of such averments in an amended complaint in the present tense.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 322.*]

3. PLEADING (§ 252*)—AMENDMENTS—CONSTRUCTION.

An amended complaint will be deemed to speak as of the time of the commencement of the action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 736; Dec. Dig. § 252.*]

4. CONSPIRACY (§ 11*)—CIVIL LIABILITY—ACTIONS—DEFENSES.

The fact that the members of a labor union have the right under its laws and rules to suspend a member does not deprive him of a right of action against them for a conspiracy to suspend him unlawfully.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 11.*]

5. CONSPIRACY (§ 19*)—CIVIL LIABILITY—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence considered, and held to sustain a verdict and judgment for damages in favor of a member of a typographical union against other members for a conspiracy to cause his suspension as a member unlawfully and contrary to the rules of the union.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 19.*]

6. CONSPIRACY (§ 21*)—CIVIL LIABILITY—ACTIONS—INSTRUCTIONS.

Instruction in an action for damages for injury caused plaintiff by a conspiracy between defendants considered and approved.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 21.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

The defendant in error was the plaintiff in an action against the plaintiffs in error, who were alleged to be partners doing a fraternal beneficiary business under the firm name of Seattle Typographical Union No. 202, organized under the laws of the state of Washington, with its chief office in the city of Seattle. The complaint alleged that on October 31, 1905, and for many years prior thereto, the plaintiff in the action was a member in good and regular standing of the said partnership; that the defendants therein were also members; that prior to October 29, 1905, they "wrongfully and unlawfully enter-

ed into a conspiracy to suspend this plaintiff from the Seattle Typographical Union No. 202, and to thereby deprive this plaintiff of the advantages and privileges of such membership therein, and to prevent him from following his usual occupation and from earning for himself and family a living"; that in pursuance of the said wrongful and unlawful conspiracy, at a meeting held on October 29, 1905, of said Union No. 202, the members thereof wrongfully and unlawfully suspended the plaintiff from the union. The complaint proceeded to allege further that, by reason of such wrongful and unlawful conspiracy and suspension of the plaintiff, he was discharged from his position as night foreman on the Seattle Daily Times, and was prevented from obtaining any other position. The facts in that regard were further set up in detail in the complaint. To this complaint a demurrer was interposed for want of jurisdiction, also for want of an allegation that either the plaintiff or the defendants or either of them were residents of the Western district of Washington, and because the complaint failed to state facts sufficient to constitute a cause of action, also for defect of parties defendant, in that the complaint did not show that all the members of the partnership were made defendants. The demurrer was overruled. The answer admitted that the defendants were members of the union. It alleged that the union is affiliated with the national association known as the International Typographical Union, and is governed by the rules made by that union; that, by such rules, a member of the union who has been declared guilty of contempt, either of the union or of a committee thereof, may be fined, reprimanded, or suspended from membership by a two-thirds vote of the union; that such member may appeal from such decision to the president of the International Typographical Union, and from his decision may again appeal to the executive council of said International Union, and from the decision of the executive council to the International Union in regular session; that prior to October 29, 1905, the plaintiff was charged by a committee of said Union 202 with contempt of said committee; that on a hearing and consideration of said charges had at a meeting duly held by said Union on October 29, 1905, at which 103 members were present, the plaintiff was declared guilty of said charge of contempt, and was suspended from said association for a period of 30 days by a vote of 100 of said members; that, if injustice was done him by said suspension, he had a full, complete, and adequate redress therefor by appeal. To this affirmative defense the plaintiff in the action demurred for want of facts sufficient to constitute a defense. The demurrer was sustained. Upon these issues on a trial before a jury, a verdict was returned for the plaintiff for $500 damages and judgment was entered thereon.

The following facts appeared in the evidence at the trial: The plaintiff was night foreman on the Seattle Daily Times, receiving a weekly salary of $35. Some time prior to October 29, 1905, the members of the union being informed that matters occurring at meetings of the union which were supposed to be private were reaching the Times office, the union appointed a committee to investigate. The committee met and summoned before it the members of the union who were employed in the Times office. All summoned except the plaintiff answered the questions propounded to them, but the plaintiff refused to answer upon the ground that his answers might tend to incriminate him. The next regular meeting of the union was held on October 29, 1905. The plaintiff knew that at this meeting the committee would report on his refusal to answer questions. He did not attend the meeting. The committee reported that the plaintiff had refused to answer its questions. A motion was made that the plaintiff be declared in contempt of the committee. The presiding officer ruled that under the laws of the union it was unnecessary to give the plaintiff a trial on the question of his contempt of the committee. One of the members gave warning to the meeting that the plaintiff could not be found guilty of anything of which he was not directly charged, and that he ought to have a trial. The motion was carried by a vote of 100 in favor thereof to 3 against it. It was stipulated on the trial that all of the defendants now plaintiffs in error were present at that meeting. Two days after that meeting, the plaintiff was notified of such suspension, and notice thereof was given to the managing officers of the Daily Times. The plaintiff was thereupon suspended from his position, and another was put in his place, and he was

notified by his employers that he ·must win his appeal from the action of the union within two weeks or be discharged. The plaintiff appealed to the president of the International Typographical Union, and the appeal was sustained, and the action of the Union 202 was reversed on November 18, 1905. In the meantime, on November 11th, plaintiff was discharged by the managers of the Daily Times.

W. H. Bogle and Charles P. Spooner, for plaintiffs in error.
G. A. C. Rochester, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The plaintiffs in error contend that the Circuit Court was without jurisdiction of the action, for the reason that it was not alleged in the amended complaint that the defendants therein were residents of the Western district of Washington, and because the amended complaint filed on April 6, 1907, alleged the citizenship of the parties in the present tense, and did not allege their citizenship at the time of the commencement of the action; citing Laskey et al. v. Newtown Mining Co. (C. C.) 56 Fed. 628. The objection that the complaint omits to allege the place of residence of the defendants, or that they are sued in a district other than that of their residence, is one that may be waived by them, and they are held to waive it when they make a general appearance and in a demurrer to the complaint join such objection with the objection that the complaint does not state facts sufficient to constitute a cause of action. St. Louis, etc., Railway v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904; Western Loan Co. v. Butte & Boston Min. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101. In answer to the other jurisdictional objection, it is sufficient to say that the original complaint alleged citizenship of the parties at the time of the commencement of the action. By that complaint and the service of process thereunder the Circuit Court acquired jurisdiction. By the repetition of the averments of citizenship in the present tense in the amended complaint the court did not lose jurisdiction. The amended pleading will be deemed to speak as of the time of the commencement of the action. Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28; Mexican Ry. Co. v. Pinkney, 149 U. S. 195, 13 Sup. Ct. 859, 37 L. Ed. 699. In the case of Laskey et al. v. Newtown Min. Co., supra, a demurrer to the original complaint had been sustained for want of proper jurisdictional averments. Therein it differs from the case at bar.

Error is assigned to the ruling of the court in sustaining the demurrer to the affirmative defense alleged in the answer. The substance of that defense was that the rules of Union 202 provided for the suspension of a member who has been declared guilty of contempt by a two-thirds vote of the union, and for an appeal from such decision; that, in fact, the defendant in error was so suspended for a period of 30 days by the vote of the union; and that, if injustice was done him thereby, he had a remedy by appeal. But the gist of the cause of action alleged in the complaint is that the plaintiffs in error wrong-

fully and unlawfully entered into a conspiracy to suspend unlawfully the defendant in error from the union, and to prevent him from following his usual occupation, and that the conspiracy was carried out. It may be assumed that in all associations of a similar character provision is made for the suspension or dismissal of members. The fact that the members had that power, and that provision was made for appeal, does not affect the question of their liability in case of a conspiracy such as was alleged in the complaint. In charging the jury the court expressed the opinion that the motion for a nonsuit would have been granted if the evidence had been clear that the position of the defendant in error would have been retained for him after the period of suspension, but decided to submit to the jury on the evidence the question whether the suspension necessarily deprived him of his position by bringing about a permanent discharge. The members of the union undoubtedly had the right to suspend the defendant in error, but that is not to say that they had the right to conspire together to suspend him unlawfully.

It is earnestly contended that the trial court erred in denying the motion of the plaintiffs in error at the close of the evidence for a directed verdict in their favor on the ground that the evidence was not sufficient to show a cause of action against them. We are unable to sustain this contention. There was evidence of strong personal feeling against the defendant in error on the part of many members of the union. He had twice before been fined by the union on account of alleged breaches of its rules, and on each occasion he had appealed to the International Typographical Union, and his appeal had been sustained. At one of the meetings one of the plaintiffs in error had ﹒﹒ted that he was after the defendant in error's scalp, and he was roundly applauded. Other members had said: "We will get him yet," "We will have his card," and made other expressions of their ill will toward him. There was evidence that his refusal to testify before the committee, for which he was charged with contempt, was not contempt, and that, according to the rules of the union, he could not be required to testify against himself. It is not denied that he was furnished no copy of the charges on which he was finally suspended, and that he had no notice to appear and was not present at the meeting at which he was suspended. There was evidence that the officers of the union refused to allow him an appeal, and refused to show him the record on which he had been suspended, and that he was compelled to take his appeal by telegraphing his own affidavit to the president of the International Typographical Union. It sufficiently appears, also, that he was discharged from his position on account of his troubles with the union and his suspension therefrom, and the hostile attitude of the members of the union.

There are numerous assignments of error to the rulings of the court in admitting and excluding evidence. We find no error in any of them.

It is contended that the court erred in charging the jury as follows:

﹒﹒t is not required for the plaintiff to prove in this case a criminal conspiracy. The only kind of conspiracy that has to be proved is that there was

a common purpose and a concert of action with the plain intent in the minds of the different persons to cause the suspension of the plaintiff from membership in the union. If that purpose existed and was successful in causing his suspension, and the members who were participants in that knew that the necessary consequence of the suspension would be the loss of his position, then the jury have a right to find from these conditions that their purpose was to injure him," etc.

It is urged against this instruction that the court thereby took away from the jury the consideration of all question of malice or ill will on the part of the plaintiffs in error. But elsewhere the court gave the jury an instruction which is to be read in connection with the instruction above quoted. The court said:

"And the decision of the case turns upon the question of whether the defendants did anything from malice and ill will, and by a concert of action, with a common purpose to do an injury, or whether they, as members of an association, acting in good faith and without malice and without ill will, acted in accordance with their best judgment to promote the interests of the association."

We find no error for which the judgment should be reversed. It is accordingly affirmed.